**STATE ex CULLITAN, Prosecutor v CAMPBELL et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 17183. Decided Feb 17, 1939

Frank T. Cullitan, Cleveland, Halle, Harris, Haber & Berick, Cleveland, for relator.

S. J. Kornhauser, Cleveland, Paul E. Lees, for respondents.

## OPINION

By TERRELL, PJ.

Plaintiff brought an action in quo warranto to determine the title to office of directors and officers of The Aetna Rubber Company.

There are two disputing groups in this company. Each group claims the right to the offices in dispute. The controversy arises over a provision in the charter and the stock issued to preferred stockholders, which attempts to designate the right or power of preferred stockholders to vote. The provisions are as follows:

"That the stockholders of preferred stock shall not be entitled to vote at any meeting of the stockholders of the company unless default shall have been made in the payment of a dividend upon the preferred stock for one year, in which event and so long as any such default shall continue thereafter the holders of preferred stock shall be entitled to the same voting power as the holders of the common stock."

Dividends upon the preferred stock were in default for more than one year.

At a certain meeting of the stockholders a certain number of the preferred stockholders interested in the plaintiff's group, attempted to vote each share of preferred stock about eighty-nine times as against one vote for each share of the common stock. This contention arose because plaintiff's group contended that the sum total of preferred stock was given the same voting power as the sum total of the common stock and that each share of preferred stock therefore would be entitled to a pro rata share of the votes to which the class of preferred stockholders would be entitled.

Without setting forth the amount of preferred stock outstanding, and the amount of common stock outstanding, it is sufficient to say that if the contention of plaintiff's group as herein set forth prevails, each share of preferred stock would be entitled to about eight-nine votes against one vote per share of common stock. Defendant's group contend that the preferred stock was entitled to be voted only one vote for each share of preferred stock against one vote for each share of common stock.

To set forth our view of the law, it is unnecessary to go into the detailed evidence pertaining to the meeting in question. Suffice it to say that if the contention of plaintiffs prevail as to the voting rights or power of the stock then a decree should be entered for the plaintiffs in this action upon their petition. This brings us directly to an interpretation of the words:

"The holders of preferred stock shall be entitled to the same voting power as the holders of the common stock."

It appears to the majority of this court that the plain, ordinary interpretation of this phrase would lead to no other conclusion but that each share of preferred stock was entitled to vote the same number of votes as each share of common stock.

Where nothing is said as to the power or right of preferred stock to be voted, the statutes provide that each share of preferred stock shall be entitled to one vote.

These statutes are of material help in interpreting the right and power of preferred stock to be voted under the provision in question. Nothing definite is said in this provision as to the extent of the voting power of each share of preferred stock. Therefore a resort to this statute leads us to conclude that each share of preferred stock has only the right of one vote.

Counsel for plaintiff has attempted very strongly to make a distinction between voting power and voting rights.

For a fair understanding of this question we refer to the case of **State ex rel v Urschal, 104 Oh St 172,** wherein in the fourth syllabus it is stated:

"4. Preferred stock in Ohio corporations have equal voting power with every other class unless limitations or restrictions upon such power are made by the resolution by virtue of which the preferred stock was authorized, and any agreement, understanding or belief to the contrary, not expressed in such resolution is ineffective."

In this Urschal case just quoted, it was held that each share of preferred stock and each share of common stock were entitled to one vote only although the number of shares of each class outstanding were not equal. It is apparent that in interpreting the phrase "that the preferred stock has equal voting power with every other class" the court clearly indicated the meaning thereof to be that the voting power of preferred stock and common stock were equal, share for share, and not class for class.

It seems hardly necessary to proceed further in an effort to arrive at a proper conclusion of the interpretation of the phrase in question.

Counsel for plaintiffs have endeavored in an ingenious manner through a highly artificial method, to build up a conclusion that the phrase in question

should be interpreted as equal voting power, class for class. However, to come to that conclusion it is necessary to read into the phrase something that it not there. To conceive the thought contended for by the plaintiff it is necessary to read into the phrase the words, "as a group" after the words "preferred stock" and after the words "common stock." These words and this thought do not appear in the plain, express language of the phrase in question. These words were readily available for use when this charter was conceived.

The mere fact that the words were omitted will not admit of the attempt of counsel to supply them by seting up an argument of the apparent purpose so-called of the right of the preferred stockholders to vote upon default in dividends.

The fact remains that the incorporators of this company had the legal right to limit, qualify and extend the voting privileges of any class of stockholders, provided apt language was used to express such privileges or qualifications.

In the charter of this company, preferred stockholders were primarily denied the right to vote and were granted the privilege of voting only upon default in the payment of dividends. The statute grants to preferred stockholders, where nothing else is said, the right to vote one vote for each share of stock. No more argument of counsel can add anything else to the statute nor to the phrase in question.

Holding these views we conclude that the writ should be denied and judgment entered for the defendants.

LEVINE, J., concurs.

LIEGHLEY, J. dissents.

**DISSENTING OPINION**

By LIEGHLEY, J.

It is agreed that the Articles of Incorporation of The Aetna Rubber Company provides that in the event that there is default in the payment of stipulated dividends on the preferred stock for one year,

"the holders of the preferred stock shall be entitled to the **same voting power as** the holders of the common stock."

What does "same voting power" mean? The respondents claim that it is a right to one vote for each share held. The relator claims that it confers upon the holders of preferred stock the aggregate number of votes that the holders of common stock have, i. e., in this case a holder of preferred stock would be entitled to 89.04 votes for each share held, to one vote for each share of common stock. These conflicting claims present the paramount issue. A decision of this issue determines the action as all other alleged issues in our view are concluded thereby.

If the claim of relator is sustained, the adjournment of the special meeting of stockholders held on December 27, 1938, was legally accomplished and all action thereafter undertaken by the group remaining was ineffective and a nullity. If the claim of respondents is correct, then there was no adjournment of the meeting and the action taken and proceedings had were substantially in accord with all legal requirements and valid under the facts and circumstances of this case.

The relator claims that in determining this paramount issue, consideration should be given to a certain understanding had at the time of filing the Articles of Incorporation between the original stockholders and incorporators that the phrase, "same voting power" conveyed the meaning contended for by relator. Much evidence was directed to establishing that such an understanding existed and it is very probable that it was so understood.

However, the Articles of Incorporation express the contract between the corporation and its stockholders and between the stockholders themselves.

State ex rel v Shaw, 103 Oh St 660.

And when ambiguity exists, many of the tests applied to contracts generally may be invoked, but not parol evidence of a purported understanding arrived at twenty years ago of the meaning of language incorporated in the Articles.

During the lapse of twenty years, doubtless the ownership of the stock has undergone many changes. A subsequent purchaser of stock adopted the contract expressed in the Articles and as expressed therein, and is bound by the terms therof and subject to no modification by some prior understanding resting in parol. The opinion in the case of State ex rel v Urschal, 104 Oh St 172, gives consideration to this subject.

The meaning of the phrase involved herein must be determined from the context of all the language in the Articles considered with respect to pertinent statutes and decisions.

Sec. 8623-50, GC, reads that unless otherwise provided in the Articles, every shareholder of record shall be entitled to one vote for each share.

It has been judicially declared that preferred stock has equal voting power with every other class unless limitations or restrictions have been duly imposed in the Articles. State ex rel v Urschal, supra.

This pronouncement furnishes little aid in solving the instant problem. The question still remains whether the phrase "the same voting power" constitutes a limitation or restriction under the circumstances of this case.

In the early days, three thousand shares preferred, and seven thousand common were issued. Later the common was increased by stock dividend to seventy thousand shares. Later the common was increased by some eighteen thousand shares. At present the preferred shares have been reduced by redemption to nine hundred and eighty.

While not controlling, it is obvious that if the power conferred by the Articles in the event of default is limited to the right of the owners of preferred stock to cast one vote for each share, then no power was conferred. During recent years since the increase of the common stock, neither before nor since

redemption of preferred, did the power rest in the owners of preferred, either by direct or cumulative voting, to elect one director. If the owners of preferred acquired upon default the right to one vote per share only, then no power was conferred.

It is strenuously urged that the language should be given its usual and ordinary meaning. It is also urged that the language was intended to serve some useful purpose and that there is a presumption that it was so used. If it be proper to scramble these two prepositions, the result would militate against the respondents.

In the consideration of kindred questions, right and power to vote have been interchangeably used in the authorities. Often when not important, voting rights and voting powers seem to have been regarded as synonymous. There is a clear distinction.

These seem to be synonymous when rights personal to the holder are concerned. Right to vote and power to vote by the shareholder as a personal right seem to be the same. But power by voting to accomplish or effect corporate change or action is a much different proposition.

For common usuage, dictionaries distinguish. For purposes of this case, an analysis of the General Corporation Act will evidence a recognition of the difference. ·

The statute places the common stock in this corporation by reason of the set-up in a class junior to the preferred. §8623-2, GC.

A survey of the sections of the General Corporation Act will portray right and power in separate categories appertaining to stock and stock ownership. When the statutes speak of rights personal to the shareholder or the attributes of shares as such, they speak of the right to vote or to do this or that.

Sections 8623-4 (b), 8623-33 (a), 8623-34 and 8623-53, GC.

When the statutes speak of change of capital structure or change of corporate purposes or the taking of any corporate action, they speak of voting power.

Sections 8623-12, 8623-15, 8623-16, 8623-17, 8623-25, 8623-39, 3623-40, 8623-48, GC.

In several sections the distinction seems to be expressly recognized.

Sections 8623-12, 8623-15, 8623-15(a), 8623-17, 8623-25, GC.

The statutes speak of the voting power of a majority of the stock by which is meant the aggregate of a majority of the voting rights of the owners of the stock to effect a specific corporate result. The total of the voting rights of anything less than a majority constitutes no voting power to take any corporate action.

Unless the right to vote of a shareholder to vote his stock is cumulated with enough others to total a majority neither his right to vote his shares nor his shares of stock possess any voting power to effect corporate action. The right to vote is personal to the owner and an attribute attached to each share, but the same possesses voting power only when in combination with others in such numbers as are required by statute or the Articles or Regulations to accomplish a specific corporate result.

So, unless the "same voting power" means the same voting rights, the claim of the Relator should be sustained. The common stock is junior in class to the preferred. When default in dividends occurred, the interests of the dominant class to the extent of a voice in management became adverse to the junior class of common stockholder. To construe this provision otherwise than to give to each class an equal voice in the management of the company would be giving the phrase a useless and purposeless construction. Voting power means voting power. Right to vote does not denote voting power. Right to vote acquires voting power only when the aggregate of such rights may by law accomplish some corporate action.

The outstanding preferred stock has been reduced from three thousand to nine hundred and eighty shares. At-

tention has been challenged to the rather unique and anomalous situation that would be presented in the event all such shares should be redeemed but one hundred or ten shares. If the holders of preferred shares have been accorded powers by the Articles equal to the holders of the common, those powers survive to the shares remaining unredeemed. These shares were redeemed by the management installed by the holders of the common in days of plenty in pursuance of a policy then believed by them to be for the best. This anomalous situation can be eradicated by redeeming the remainder. A situation created by the holders of the common should not be permitted to prejudice the legal rights of the preferred unredeemed.

Respondents place considerable reliance to sustain their claim upon the case of State v Urschall, supra, and the case of Keith v State, 113 Oh St 491. These cases do not seem to be very helpful. These cases deal with the right of owners of preferred stock to vote. The Keith case involved a provision that upon default "the preferred stock shall have the right to vote as long as" the default continues and it was held that such right to vote means one vote per share as per statute §8636, GC, unless the Articles recite some restrictions or qualifications.

In the case at bar "same voting power" constitutes such restrictions or qualifications. That phrase can have but one meaning. It defines and fixes the voting right of the shareholder of each class of stock and restricts and qualifies the exercise thereof. Each owner may assert and has voting rights but this is far from possessing voting power to legally effect a corporate purpose.

Entertaining these views, the meeting of December 27th, 1938, was legally adjourned and all proceedings had thereafter are invalid and of no force and effect. The Relator has sustained his claim and is entitled to judgment.